# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| RAFAEL CAJIGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>MESSERLI & KRAMER, P.A. and LVNV FUNDING, LLC,<br><br>    Defendants. | Case No.: 20-cv-262<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Rafael Cajigas is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff debts incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant Messerli & Kramer, PA ("Messerli") is a law firm with its principal place of business located at 100 South 5th Street, 1400 Fifth Street Towers, Minneapolis, MN 55402-5540.

7. Messerli is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Messerli is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Messerli is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant LVNV Funding, LLC ("LVNV") is a foreign limited liability company with its principal place of business located at 15 South Main St., Greenville, South Carolina 29601.

11. LVNV is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time LVNV acquires them.

12. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

13. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); see, e.g., *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019);

*Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018) ; *see also Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017), *aff'd.* 916 F.3d 260; *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017), *aff'd.* 898 F.3d 364 ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose … is the collection of any debts,' or (2) it 'regularly collects or attempts to collect … debts owed or due … another.'").

14. The primary purpose of LVNV's business, and LVNV's principal purpose, is the collection of consumer debts. LVNV's website states:

> LVNV Funding LLC, ("LVNV") purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report or in a letter from a collection agency.

http://www.lvnvfunding.com/.

15. LVNV is also engaged in the business of a collection agency under Wisconsin law, in that it purchases and receives assignment of consumer debts that are in default at the time Crown acquires them.

16. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms

3

represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

17. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

18. LVNV is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

19. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

20. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

*See* https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/ (last accessed March 14, 2018).

4

21. LVNV uses both ordinary collection methods, such as collecting debts through mail and telephone communications, and also civil lawsuits, in its collection business.

22. LVNV is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3)..

23. A company meeting the definition of a "debt collector" (here, LVNV) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf).

## FACTS

24. On or about March 3, 2019, Messerli mailed a debt collection letter to Plaintiff regarding an alleged debt owed to LVNV "as successor in interest to WebBank." A copy of this letter is attached to this complaint as Exhibit A.

25. Upon information and belief, the alleged debt reference in Exhibit A was incurred by use of a credit card, used only for personal, family, and household purposes.

26. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

27. Upon information and belief, Exhibit A is a form debt collection letter used to attempt to collect alleged debts.

28. Upon information and belief, Exhibit A is the first written communication Messerli mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

29. Exhibit A includes the following representation which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

5

> **IMPORTANT NOTICE CONCERNING YOUR RIGHTS**
>
> This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify us within 30 days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid. If you notify us in writing within thirty days after receipt of this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and mail a copy of such verification or judgment to you. Also, upon your written request within 30 days after receipt of this letter, we will provide you with the name and address of the original creditor if different from the current creditor.

30. <u>Exhibit A</u> identifies the name of the creditor in a false, deceptive, misleading, and confusing manner.

31. The header in <u>Exhibit A</u> states:

> Date: March 03, 2019
> Our Client: LVNV Funding LLC
> Original Creditor: WebBank
> Consumer: Rafael Cajigas
> Balance: $646.33
> Our File Number: 19-110093
> Account Number: XXXXXXXXXXXX4387

32. The body in <u>Exhibit A</u> states that Messerli "represents LVNV Funding LLC as successor in interest to WebBank…."

33. The Seventh Circuit recently found that a debt collection letter stating that it was collecting a debt on behalf of "CLIENT: PAYPAL CREDIT" and "ORIGINAL CREDITOR: Comenity Capital Bank" clearly identified the current creditor as Comenity Capital Bank. *Smith v. Simm Assocs.*, App. Nos. 18-3350 and 19-1155, 2019 U.S. App. LEXIS 17072, at *2 (7th Cir. June 6, 2019).

34. The plaintiff in *Smith* argued that the unsophisticated consumer would be confused as to whether the debt was owed to the "original creditor" or the debt collector's "client." *Id.* at *5.

35. The Seventh Circuit found that the letter in *Smith* clearly identified the original creditor as the current creditor because it "identifie[d] a single 'creditor,' as well as the

6

commercial name to which the debtors had been exposed, allowing the debtors to easily recognize the nature of the debt." *Id.*, at *6-7.

36. The Seventh Circuit explained that "even accurate technical terminology— 'transfer' or 'assignee'—can be confusing to an unsophisticated consumer and can violate § 1692g(a)(2), which requires a debt collector to present information about the creditor and the debt in the manner the unsophisticated consumer can understand." *Id.* at *6.

37. Exhibit A is similar to the letter in *Smith*, describing one entity as the "Client" and another entity as the "Original Creditor," except that, upon information and belief, the "original creditor" in this case has no interest in the debt's receivables because it has sold those receivables outright to LVNV.

38. As the Seventh Circuit explained in *Smith*, even if the statement that LVNV was "successor in interest to WebBank" is technically accurate, it does not clarify LVNV's role in the eyes of the unsophisticated consumer, who would nonetheless wonder whether the debt was still owed to the only "creditor" identified in the letter. *Id.* at *7 ("Indeed, by informing debtors they could request the name of the original creditor *if different* from the current creditor, the letter alerts debtors the original and current creditor may be the same.").

39. Confusing and misleading representations about the name of the creditor are material misrepresentations because they create the potential for fraud or double-payments. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 324-25 (7th Cir. 2016); *Taylor v. Alltran Fin., LP*, No. 18-cv-306-JMS-MJD, 2018 U.S. Dist. LEXIS 159862, at *6 (S.D. Ind. Sept. 19, 2018); see also *Steffek v. Client Services, Inc.*, 2020 U.S. App. LEXIS 1759, *12 (7th Cir. January 21, 2020)

7

40. For this reason, courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal*, 2013 U.S. Dist. LEXIS 105355, at *12-13; *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by*, 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11.

41. Furthermore, by identifying LVNV as Messerli's "Client," Exhibit A implies an attorney-client relationship.

42. Exhibit A also is printed on Messerli's letterhead, which identifies the organization as the "ATTORNEYS AT LAW."

43. Exhibit A thus falsely implies that an attorney was meaningfully involved in the collection of the alleged debt as of the date of the letter.

8

44. The unsophisticated consumer, receiving a letter from a law firm, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

45. The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

46. "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.*; *see also Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

47. The Third Circuit has held that collection letters purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

48. Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

49. Exhibit A does not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005).

50. Messerli is a high-volume debt collector.

51. Upon information and belief, at the time Exhibit A was mailed to Plaintiff and the class, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

52. Upon information and belief, from the time that consumer debts are placed with Messerli for collection until the time that a legal complaint is drafted, the only employees of Messerli who are directly involved in the collection process of consumer debts are non-attorneys.

53. Moreover, Messerli is frequently engaged to send collection letters to consumers with no intent that Messerli will ever file a lawsuit to collect the debt.

54. Upon information and belief, a significant portion of Messerli's debt collection activities during that time period consists of computer-automated processes, including the sending of computer-generated form letters like Exhibit A.

55. Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney associated with Messerli had reviewed any documentation underlying the alleged debt, including but not limited to any contract, payment history, or any other documents establishing or evidencing the alleged debts.

56. Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney associated with Messerli had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Messerli or a third party mailing company generated and mailed Exhibit A as part of a batch of identical, except for personal information, form debt collection letters.

57. Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney associated with Messerli had exercised the professional judgment of an attorney that

10

Plaintiff was delinquent on his alleged debt or a candidate for legal action, nor was any attorney associated Messerli meaningfully involved in the decision to send Exhibit A to Plaintiff.

58. Plaintiff read Exhibit A.

59. Plaintiff was confused and misled by Exhibit A.

60. The unsophisticated consumer would be confused and misled by Exhibit A.

### *The FDCPA*

61. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare*

*Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

62. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

63. Misrepresentations of substantive information about the debt collector or the debt, including the timing of deadlines for settlement offers, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64,

72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

64. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

65. 15 U.S.C. § 1692e(2)(a) specifically prohibits debt collectors from making false representations about "the character, amount, or legal status of any debt."

66. 15 U.S.C. § 1692e(3) specifically prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney."

67. 15 U.S.C. § 1692e(5) specifically prohibits debt collectors from "threat[ing] to take any action that cannot legally be taken or that is not intended to be taken."

68. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

69. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

70. 15 U.S.C. § 1692g(a) states, in pertinent part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> …
> (2) the name of the creditor to whom the debt is owed;
> …

14

71. To satisfy § 1692g(a)(2), a debt collector must state the name of the creditor in a non-confusing manner:

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016).

72. Both before and after the Seventh Circuit decided *Janetos*, courts in and outside the Seventh Circuit have held that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal*, 2013 U.S. Dist. LEXIS 105355, at *12-13; *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11; *Leavens v. Nat'l Credit Sys.*, No. 17-cv-7354, 2019 U.S. Dist. LEXIS 58399, at *10-13 (E.D.N.Y. Mar. 29, 2019); *Anderson v. Ray Klein*, No. 18-cv-11389, 2019 U.S. Dist. LEXIS 63759, at *6-8 (E.D. Mich. Apr. 10, 2019).

## *The WCA*

73. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

74. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

75. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

76. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

77. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

78. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

16

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

79. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

80. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

81. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

## COUNT I - FDCPA

82. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

83. On the face of Exhibit A, the unsophisticated consumer would be unable to determine whether LVNV or "WebBank" was the current creditor to whom the debt was owed.

84. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(2).

17

## COUNT II - FDCPA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. Exhibit A creates the false impression that an attorney at Messerli had personally reviewed the circumstances of Plaintiff's alleged debts and the letters itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

87. Before mailing Exhibit A to Plaintiff, no attorney at Messerli had any meaningful involvement with Plaintiff's alleged debt or the letters. *See Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

88. Defendants thereby violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and § 1692f.

## COUNT III – WCA

89. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. Exhibit A creates the false impression that an attorney at Messerli had personally reviewed the circumstances of Plaintiff's alleged debts and the letters itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

91. Before mailing Exhibit A to Plaintiff, no attorney at Messerli had any meaningful involvement with Plaintiff's alleged debt or the letters. *See Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

92. Defendants violated Wis. Stat. § 427.104(1)(k).

## CLASS ALLEGATIONS

93. Plaintiff brings this action on behalf of a class of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letters by Defendant Messerli in the form of <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) on behalf of Midland Funding, (e) between February 18, 2019 and February 18, 2020, inclusive, (f) and such letter was not returned by the postal service.

94. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

95. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violate the FDCPA and/or the WCA.

96. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

97. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

98. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

99. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: February 18, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com